# EXHIBIT E

# Complaint, Schlatre v. Marathon Digital Holdings, Inc., No. 2:21-cv-2209 (D. Nev.)

ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| TAD SCHLATRE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MARATHON DIGITAL HOLDINGS, INC. f/k/a MARATHON PATENT GROUP, INC., MERRICK D. OKAMOTO, FREDERICK G. THIEL, and SIMEON SALZMAN, <br><br> Defendants. | Case No. 2:21-cv-2209 <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Tad Schlatre ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Marathon Digital Holdings, Inc. f/k/a Marathon Patent Group, Inc.

1

("Marathon" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Marathon securities between October 13, 2020 and November 15, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Marathon is a digital asset technology company that mines cryptocurrencies with a focus on the blockchain ecosystem and the generation of digital assets in U.S. The Company was formerly known as "Marathon Patent Group, Inc." and changed its name to "Marathon Digital Holdings, Inc." on March 1, 2021.

3. In October 2020, Marathon announced the formation of a new joint venture with Beowulf Energy LLC ("Beowulf") purportedly focused on delivering low-cost power to Marathon's Bitcoin mining operations (the "Beowulf Joint Venture"). In connection with that joint venture, Marathon entered into a series of agreements with multiple parties to design and build a data center in Hardin, Montana (the "Hardin Facility"), issuing 6 million shares of its common stock to the parties of those agreements.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Beowulf Joint Venture, as it related to the Hardin Facility, implicated potential regulatory violations, including U.S. securities law violations; (ii) as a result, the Beowulf Joint Venture subjected Marathon to a heightened risk of regulatory scrutiny; (iii) the foregoing was reasonably likely to have a material negative impact on the Company's business and commercial prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5. On November 15, 2021, Marathon disclosed that "the Company and certain of its executives received a subpoena to produce documents and communications concerning the Hardin, Montana data center facility[,]" and advised that "the SEC may be investigating whether or not there may have been any violations of the federal securities law."

6. On this news, Marathon's stock price fell $20.52 per share, or 27.03%, to close at $55.40 per share on November 15, 2021.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Marathon is headquartered in this Judicial District,

3

Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

11. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired Marathon securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Marathon is a Nevada corporation with principal executive offices located at 1180 North Town Center Drive, Suite 100, Las Vegas, Nevada 89144. The Company's common stock trades in an efficient market on the Nasdaq Capital Market ("NASDAQ") under the trading symbol "MARA".

14. Defendant Merrick D. Okamoto ("Okamoto") served as Marathon's Chief Executive Officer ("CEO") from before the start of the Class Period to April 26, 2021. Okamoto currently serves as the Executive Chairman of the Company's Board of Directors (the "Board").

15. Defendant Frederick G. Thiel ("Thiel") has served as Marathon's CEO since April 26, 2021.

16. Defendant Simeon Salzman ("Salzman") has served as Marathon's Chief Financial Officer since October 19, 2020.

17. Defendants Okamoto, Thiel, and Salzman are sometimes referred to herein as the "Individual Defendants."

18. The Individual Defendants possessed the power and authority to control the contents of Marathon's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Marathon's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Marathon, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Marathon is a digital asset technology company that mines cryptocurrencies with a focus on the blockchain ecosystem and the generation of digital assets in U.S. The Company was formerly known as "Marathon Patent Group, Inc." and changed its name to "Marathon Digital Holdings, Inc." on March 1, 2021.

20. In October 2020, Marathon announced the formation of a new joint venture with Beowulf—a private, independent infrastructure holding company that develops, builds, owns, and operates power generation and industrial infrastructure facilities worldwide. The Beowulf Joint Venture was purportedly focused on delivering low-cost power to Marathon's Bitcoin mining operations. In connection with that joint venture, Marathon entered into a series of agreements with multiple parties, including affiliates of Beowulf and Two Point One, LLC ("2Pl"), a Delaware limited liability company, to design and build a data center in Hardin, Montana, issuing 6 million shares of its common stock to the parties of those agreements.

5

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Materially False and Misleading Statements Issued During the Class Period**

21. The Class Period begins on October 13, 2020, when Marathon issued a press release announcing the formation of the Beowulf Joint Venture (the "October 2020 Press Release"). That press release represented that the Beowulf Joint Venture was "focused on delivering low cost power to Marathon's Bitcoin mining operations[,]" while also asserting various purported benefits that would flow to Marathon in connection with that joint venture. Specifically, the October 2020 Press Release stated, in relevant part:

> Marathon has entered into agreements with Beowulf to co-locate its Bitcoin Mining Data Center (the "Data Center") at the Big Horn Data Hub, which comprises 20 acres of land adjacent to Beowulf's Hardin Generating Station, a 105 MW power facility located in Hardin, Montana. Beowulf will provide power from the Hardin plant to the Data Center at a production cost of \$0.028/kWh. Beowulf will also become an equity shareholder of Marathon as a result of the joint venture. Marathon will retain 100% of the Bitcoin mining output generated at the Data Center.

> Marathon will deploy the 11,500 next generation S19 Pro Antminers (110 TH/s) it previously acquired through its partnership with Bitmain Inc. at the Data Center. These miners will generate 1.265 EH/s when fully deployed, with full deployment anticipated through Q2 2021. Currently, 500 of the S19 Pro Antminers have been delivered and deployed at the Data Center. The Data Center has the capacity to deploy up to 30,000 S19 Pro Miners that will generate 3.320 EH/s, providing Marathon with substantial opportunity for future expansion.

> The Data Center will lower Marathon's aggregate mining cost for electricity and data center management to \$0.034/kWh, which is 38% below the Company's current cost of mining. This low-cost electricity reduces Marathon's breakeven costs to produce Bitcoin from approximately \$7,500 per Bitcoin today to \$4,600 per Bitcoin, dramatically improving the Company's future profitability.

22. Additionally, the October 2020 Press Release quoted Defendant Okamoto, who stated that "[t]he closing of this joint venture with Beowulf represents the completion of a long journey to own a Bitcoin mining facility[,]" and that "[p]artnering with an experienced independent power producer enables us to maintain control and certainty of Marathon's energy and operational costs, at rates that represent some of the lowest in North America."

23. The October 2020 Press Release also quoted Nazar Khan, Executive Vice President of Beowulf, who stated, in relevant part, that "[i]n pursuing the co-location of a Bitcoin mining operation at Hardin, we sought to capture the inherent value to the Data Center of securing a long-term supply of reliable, secure, and low-cost power while benefitting from the significant on-site technical expertise to ensure efficient operations[,] and that the location of "the Data Center has a meaningful competitive advantage on energy pricing, moderate climate, and regulatory stability."

24. Also on October 13, 2020, Marathon filed a current report on Form 8-K with the SEC, which provided additional details regarding the Beowulf Joint Venture (the "October 2020 8-K"). Specifically, that filing stated, *inter alia*:

> On October 6, 2020, Marathon . . . entered into a series of agreements with affiliates of Beowulf . . . and [2Pl] . . . . Beowulf and 2Pl have been designing and developing a data center facility of up to 100-megawatts (the "Facility") that will be located next to, and supplied energy directly from, Beowulf's power generating station in Hardin, MT (the "Hardin Station"). The Facility is being developed in two phases to reach its 100 MW capacity, and the Hardin Station will supply the Facility exclusively with energy to operate Bitcoin mining servers.
>
> The projected build out cost for Phase I is approximately $14 million, which is front loaded as the infrastructure is being built most efficiently for the full 100 MW project. It entails high voltage equipment to break down the full 100 MW load from the generating station, and thereafter, the infrastructure cost per MW is a matter of distributing power at a container level. Assuming market conditions similar to current, the build out cost for Phase II works out to approximately $200,000 - $250,000 per MW. These are all in costs covering all equipment and labor needed starting from the power coming off the Generating Station distributed down to running the actual miners: including breakers, transformers, switches, containers, PDUs, fans, network cables, and the like.
>
> Marathon and Beowulf entered into an exclusive Power Purchase Agreement for the initial supply of 30 MW (Phase I), and up to 100 MW in the aggregate (Phase II), of energy load to the Facility at a cost of $0.028/kWh. The initial term of the Power Purchase Agreement is five years, with up to five additional three-year extensions, as mutually agreed, assuming 75% energy utilization of the initial 30 MW of energy supplied to the Facility. Marathon purchased certain mining infrastructure and equipment for the Facility from Beowulf for a purchase price of $750,000, and Marathon has the right, at no additional cost, to construct and access the Facility on land adjacent to the Hardin Station pursuant to a lease agreement with Beowulf.

25. The October 2020 8-K also provided additional details regarding Marathon's issuance of common stock in connection with completing, operating, and maintaining the Hardin Facility, including that "Beowulf and 2P1 will provide operation and maintenance services for the Facility pursuant to a Data Facility Services Agreement, in exchange for an initial issuance of 3,000,000 shares of Marathon's common stock to each of Beowulf and 2Pl"; that "[u]pon completion of Phase I, Marathon will issue to Beowulf an additional 150,000 shares of its common stock"; that "[d]uring Phase II, Marathon will issue to Beowulf an additional 350,000 shares of its common stock – 150,000 shares upon reaching 60 MW of Facility load and 200,000 at completion of the full 100 MW of Facility load"; and that "[a]ll shares issued under the Data Facility Services Agreement are issued pursuant to transactions exempt from registration under Section 4(a)(2) of the Securities Act of 1933."

26. On November 12, 2020, Marathon issued a press release announcing the Company's 2020 fiscal third quarter financial results. That press release highlighted, in relevant part, the Company's "joint venture with Beowulf Energy for 105-Megawatt bitcoin mining data center[.]"

27. Also on November 12, 2020, Marathon filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended November 12, 2020 (the "3Q20 10-Q"). That filing contained substantively the same statements as referenced in ¶¶ 24-25, *supra*, regarding the Beowulf Joint Venture.

28. Appended as exhibits to the 3Q20 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Okamoto and Salzman certified that "[t]he [3Q20 10-Q] fully complies with the requirements of section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [3Q20 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

29.     On November 13, 2020, Marathon filed an amendment to the 3Q20 10-Q on Form 10-Q/A with the SEC (the "3Q20 10-Q/A).  That filing contained substantively the same statements as referenced in ¶¶ 24-25, *supra*, regarding the Beowulf Joint Venture.

30.     Appended as exhibits to the 3Q20 10-Q/A were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Okamoto and Salzman.

31.     On March 16, 2021, Marathon issued a press release announcing the Company's fourth quarter and fiscal year 2020 results (the "4Q/FY20 Press Release").  That press release highlighted, in relevant part, the "[i]nitiated construction of [the] mining facility adjacent to Beowulf's energy plant in Hardin, MT, supplying Marathon long-term access to electricity at 2.8¢/kWh[,]" and the "install[ation of] 3,697 S-19 ASIC miners at the mining facility Hardin, MT, increasing Marathon's current active mining fleet to 5,690 miners with an additional 6,641 already delivered . . . and in the process of being installed[.]"

32.     Additionally, the 4Q/FY20 Press Release quoted Defendant Okamoto, who stated, in relevant part, that "we established our 105 MW mining facility in Hardin, MT, where we have consistent access to electricity at rates far below market average, we presciently purchased more than 100,000 of the industry's top performing Bitcoin miners . . . and we enhanced our balance sheet[,]" and that "[w]ith a solid foundation to grow the business established, we are now focused on continuing to build out our mining facility and bring our miners . . . online."

33.     Also on March 16, 2021, Marathon filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K").  That filing contained substantively the same statements as referenced in ¶¶ 24-25, *supra*, regarding the Beowulf Joint Venture.

34.     Appended as an exhibit to the 2020 10-K were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Okamoto and Salzman.

35. On May 10, 2021, Marathon filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q"). That filing contained substantively the same statements as referenced in ¶¶ 24-25, *supra*, regarding the Beowulf Joint Venture.

36. Appended as exhibits to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Thiel and Salzman.

37. On May 12, 2021, Marathon filed an amendment to the 1Q21 10-Q on Form 10-Q/A with the SEC (the "1Q21 10-Q/A). That filing contained substantively the same statements as referenced in ¶¶ 24-25, *supra*, regarding the Beowulf Joint Venture.

38. Appended as exhibits to the 1Q21 10-Q/A were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Thiel and Salzman.

39. On August 13, 2021, Marathon filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q"). That filing contained substantively the same statements as referenced in ¶¶ 24-25, *supra*, regarding the Beowulf Joint Venture.

40. Appended as exhibits to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Thiel and Salzman.

41. The statements referenced in ¶¶ 21-40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Beowulf Joint Venture, as it related to the Hardin Facility, implicated potential regulatory violations, including U.S. securities law violations; (ii) as a result, the Beowulf Joint Venture subjected Marathon to a heightened risk of regulatory scrutiny; (iii) the foregoing was reasonably likely to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

have a material negative impact on the Company's business and commercial prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

42. On November 15, 2021, Marathon filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021. In the "Legal Proceedings" section of that filing, the Company disclosed, in relevant part:

> On October 6, 2020, the Company entered into a series of agreements with multiple parties to design and build a data center for up to 100-megawatts in Hardin, MT. In conjunction therewith, the Company filed a Current Report on Form 8-K on October 13, 2020. The 8-K discloses that, pursuant to a Data Facility Services Agreement, the Company issued 6,000,000 shares of restricted Common Stock, in transactions exempt from registration under Section 4(a)(2) of the Securities Act of 1933, as amended. ***During the quarter ended September 30, 2021, the Company and certain of its executives received a subpoena to produce documents and communications concerning the Hardin, Montana data center facility described in our Form 8-K dated October 13, 2020. We understand that the SEC may be investigating whether or not there may have been any violations of the federal securities law.*** We are cooperating with the SEC.

(Emphasis added.)

43. On this news, Marathon's stock price fell $20.52 per share, or 27.03%, to close at $55.40 per share on November 15, 2021.

44. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### Post-Class Period Developments

45. On December 15, 2021, Marathon announced that Defendant Okamoto "plans to retire at the end of 2021" and that the Board "has appointed [Defendant] Thiel, Marathon's current CEO, to succeed Okamoto on January 1, 2022, at which time, Thiel will maintain the responsibilities of both chairman and CEO."

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

46. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Marathon securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Marathon securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Marathon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

50. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Marathon;

- whether the Individual Defendants caused Marathon to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Marathon securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

52. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Marathon securities are traded in an efficient market;

13

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Marathon securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Marathon securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Marathon securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Marathon securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Marathon's finances and business prospects.

59. By virtue of their positions at Marathon, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Marathon, the Individual Defendants had knowledge of the details of Marathon's internal affairs.

61. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Marathon. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Marathon's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Marathon securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Marathon's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Marathon securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62. During the Class Period, Marathon securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Marathon securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that

were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Marathon securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Marathon securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## SECOND CLAIM FOR RELIEF

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

65. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66. During the Class Period, the Individual Defendants participated in the operation and management of Marathon, and conducted and participated, directly and indirectly, in the conduct of Marathon's business affairs. Because of their senior positions, they knew the adverse non-public information about Marathon's misstatement of income and expenses and false financial statements.

67. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Marathon's

financial condition and results of operations, and to correct promptly any public statements issued by Marathon which had become materially false or misleading.

68. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Marathon disseminated in the marketplace during the Class Period concerning Marathon's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Marathon to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Marathon within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Marathon securities.

69. Each of the Individual Defendants, therefore, acted as a controlling person of Marathon. By reason of their senior management positions and/or being directors of Marathon, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Marathon to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Marathon and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Marathon.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

B.  Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.  Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.  Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 17, 2021

Respectfully submitted,

**MUEHLBAUER LAW OFFICE, LTD.**

*/s/ Andrew R. Muehlbauer*
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*