Matthew L. Sharp, Esq.
Nevada Bar No. 4746
**MATTHEW L. SHARP, LTD.**
432 Ridge Street
Reno, NV 89501
(775) 324-1500
matt@mattsharplaw.com

G. MARK ALBRIGHT, ESQ. (NV Bar # 1394)
DANIEL R. ORMSBY, ESQ. (NV Bar # 14595)
ALBRIGHT, STODDARD, WARNICK
& ALBRIGHT
801 S Rancho Dr., Ste D4
Las Vegas, NV 89106
(702) 384-7111

*[Proposed] Co-Liaison Counsel for Plaintiffs*

*ADDITIONAL COUNSEL ON SIGNATURE PAGE*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KIMBERLY BERNARD, Derivatively on Behalf of MARATHON DIGITAL HOLDINGS, INC. (f/k/a MARATHON PATENT GROUP, INC.),<br><br>Plaintiff,<br><br>v.<br><br>FRED THEIL, GEORGES ANTOUN, KEVIN DENUCCIO, SARITA JAMES, JAY LEUPP, SAID OUISSAL, MERRICK D. OKAMOTO, and SIMEON SALZMAN,<br><br>Defendants,<br><br>-and-<br><br>MARATHON DIGITAL HOLDINGS, INC. (f/k/a MARATHON PATENT GROUP, INC.),<br><br>Nominal Defendant. | Case No.: 2:22-cv-00305-RFB-VCF<br><br>**MOTION FOR (1) CONSOLIDATION (2) APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND (3) TO TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT** |

| | |
|---|---|
| ROY STRASSMAN, Derivatively on Behalf of MARATHON DIGITAL HOLDINGS, INC. (f/k/a MARATHON PATENT GROUP, INC.), <br><br> Plaintiff, <br><br> v. <br><br> FRED THEIL, GEORGES ANTOUN, KEVIN DENUCCIO, SARITA JAMES, JAY LEUPP, SAID OUISSAL, MERRICK D. OKAMOTO, AND SIMEON SALZMAN, <br><br> Defendants, <br><br> -and- <br><br> MARATHON DIGITAL HOLDINGS, INC. (f/k/a MARATHON PATENT GROUP, INC.), <br><br> Nominal Defendant. | Case No.: 2:22-cv-00724-ART-EJY |

**STATEMENT OF ISSUE TO BE DECIDED**

Should the Court (1) consolidate the two above-referenced actions, (2) appoint Wolf and GM&E as interim co-lead counsel under Federal Rule of Civil Procedure 23(g) and (3) temporarily stay the current motion to dismiss briefing until a new schedule is set for the filing of a consolidated complaint?

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

Plaintiffs, shareholders of Marathon, request that the Court (1) consolidate the actions, (2) appoint Wolf and GM&E as interim co-lead counsel to prosecute this action on behalf of the Plaintiffs suing derivatively on behalf of Nominal Defendant Marathon Holdings, Inc. ("Marathon" or "the Company") under Federal Rule of Civil Procedure 23(g) and (3) temporarily stay the motion to dismiss briefing until a new schedule is set for the filing of a consolidated complaint.

///

///

MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD  COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT

Both actions concern the same alleged general conduct and misconduct of the Board of the Company in permitting the officers of Marathon to allegedly breach their fiduciary duties. The consolidation of these two actions would serve the interests of judicial economy.

Moreover, Wolf and GM&E have capably represented the Plaintiffs and the nominal defendant Marathon from the inception of the litigation, investigating and developing potential claims, analyzing public reports and admissions about the allegations at issue, filing separate complaints and then coordinating together in an effort to prosecute the derivative litigation in an efficient manner. The firms have many years of experience prosecuting complex shareholder actions, have successfully litigated the types of claims asserted in this case, and have the resources necessary to vigorously prosecute the case and protect the interests of the nominal defendant.

In addition, in order ensure efficient proceedings in the two matters, Plaintiffs respectfully submit that the briefing on the pending motions to dismiss made in each action be stayed until this Court rules on the instant motion and sets a new schedule for the filing of a consolidated complaint. In the alternative, should the motion for consolidation and/or appointment of interim co lead counsel be denied, then the Plaintiffs request that their response to the pending motions to dismiss be due twenty-one (21) days after an Order is entered by the Court on this motion.

Defendants have no objection to the proposed consolidation of the two actions, take no position on Plaintiffs' request for a leadership appointment and oppose Plaintiff's request to stay the briefing on the current motions to dismiss.

II.   **BACKGROUND**

   A.   **Plaintiffs' Allegations**

These are two shareholder derivative actions brought on behalf of and for the benefit of Marathon, against certain of its officers and directors named as defendants herein seeking to remedy their breaches of fiduciary duties. Defendants' actions have caused, and will continue to cause, substantial financial harm and reputational damage to Marathon. *See Bernard* Complaint, ¶ 1.

The Company is a corporation with principal executive offices located at 1180 North Town Center Drive, Suite 100, Las Vegas, Nevada 89144. *Id.* ¶ 7. Marathon is a digital asset technology company that mines cryptocurrencies with a focus on the blockchain ecosystem and the

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD  COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

- 3 -

generation of digital assets in U.S.  The Company was formerly known as "Marathon Patent Group, Inc." and changed its name to "Marathon Digital Holdings, Inc." on March 1, 2021. *Id.* ¶ 28.

In October 2020, the Company announced the formation of a new joint venture with Beowulf Joint Venture ("Beowulf")—a private, independent infrastructure holding company that develops, builds, owns, and operates power generation and industrial infrastructure facilities worldwide.  Beowulf was purportedly focused on delivering low-cost power to the Company's Bitcoin mining operations.  In connection with that joint venture, the Company entered into a series of agreements with multiple parties, including affiliates of Beowulf and Two Point One, LLC ("2Pl"), a Delaware limited liability company, to design and build a data center in Hardin, Montana, issuing 6 million shares of its common stock to the parties of those agreements.

On March 16, 2021, Defendants caused the Company to issue a press release announcing the Company's fourth quarter and fiscal year 2020 results (the "4Q/FY20 Press Release").  That 4Q/FY20 Press Release highlighted the fact that the Company "[i]nitiated construction of [the] mining facility adjacent to Beowulf's energy plant in Hardin, MT, supplying Marathon long-term access to electricity at 2.8¢/kWh[,]" and the "install[ation of] 3,697 S-19 ASIC miners at the mining facility Hardin, MT, increasing Marathon's current active mining fleet to 5,690 miners with an additional 6,641 already delivered . . . and in the process of being installed[.]"

Additionally, the 4Q/FY20 Press Release quoted Defendant Okamoto: "we established our 105 MW mining facility in Hardin, MT, where we have consistent access to electricity at rates far below market average, we presciently purchased more than 100,000 of the industry's top performing Bitcoin miners . . . and we enhanced our balance sheet[,]" and that "[w]ith a solid foundation to grow the business established, we are now focused on continuing to build out our mining facility and bring our miners . . . online."

The statements referenced above were materially false and misleading. Specifically, Defendants caused the Company to make false and/or misleading statements and/or fail to disclose that: (i) Beowulf's activities, as it related to the Hardin Facility, implicated

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD  COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

- 4 -

potential regulatory violations, including U.S. securities law violations; (ii) as a result, Beowulf subjected Marathon to a heightened risk of regulatory scrutiny; (iii) the foregoing was reasonably likely to have a material negative impact on the Company's business and commercial prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**B.      Procedural History**

Presently pending in this District are the following two (2) related shareholder derivative actions:

| Case Name | Case No. | Filing Date |
|---|---|---|
| *Bernard v. Theil, et al.* | Case No.: 2:22-cv-00305 | February 18, 2022 |
| *Strassman v. Theil, et al.* | Case No.; 2:22-cv-00724 | May 5, 2022 |

Each of the related actions is brought for the benefit of Nominal Defendant Marathon against members of Marathon's Board of Directors ("Board") and certain of the Company's officers.  There is also a significant overlap of facts and legal claims among the cases, including for violation of federal or state securities laws, breach of fiduciary duty, and unjust enrichment.

**III.     ARGUMENT**

**A. Consolidation**

> Rule 42(a) of the Federal Rules of Civil Procedure provides as follows:
> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Plaintiffs believe consolidation is appropriate for the above-referenced actions and any subsequently filed derivative action filed with this Court because they will involve common questions of law and fact and allege virtually identical state law claims of breach of fiduciary duty. Accordingly, the two derivative actions should be consolidated for all purposes in the interests of judicial economy and overall efficiency.  Defendants do not oppose consolidation.

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD  COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

- 5 -

### B. The Court Should Appoint Wolf and GM&E as Co-Lead Counsel

Competing derivative actions and uncoordinated plaintiffs' counsel create a risk of inefficient and inconsistent results that would be adverse to the Company's interests. For those reasons, courts routinely appoint lead counsel in derivative actions to facilitate the litigation for the sake of both plaintiffs and defendants. Accordingly, Plaintiffs respectfully request that the Court appoint Wolf and GM&E as Co-Lead Derivative Counsel.

In complex cases such as this one, it is well-established that the court may appoint a plaintiff leadership structure to coordinate the prosecution of the litigation. *Saprano v. Lief*, Nos. 10cv2079 BTM(BLM), 10cv2132 BTM(BLM), 10cv2344 BTM(BLM), 2011 WL 830109, at *2 (S.D. Cal. Mar. 3, 2011) ("The benefits of appointing a lead counsel in consolidated derivative actions is clear: 'The benefits achieved by consolidation and the appointment of general counsel, *i.e.*, elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation.'") (quoting *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958)); *see also In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988); *In re Doral Fin. Corp. Sec. Litig.*, No 05 MDL 1706 (RO), 2006 WL 1120491, at *1 (S.D.N.Y. April 27, 2006); *In re Comverse Tech., Inc. Deriv. Litig.*, 06 Civ. 1849(NGG)(RER), 2006 WL 3761986, at *1 (E.D.N.Y. Sept. 22, 2006) (holding that courts have "the inherent power to provide for the conduct of the proceedings" and can therefore appoint lead counsel in derivative actions) (citing Advisory Committee Note to Rule 23.1); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 66, 673 (C.D. Cal. 2005) ("A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to 'protect the interest of the class'"). It is well-settled that a judge may appoint plaintiff's counsel as lead counsel. *In re Bendectin*, 857 F.2d at 297.

The relevant factors are the qualifications of counsel, their diligence in prosecuting the action and ability to fairly and adequately represent the interests of their clients and the Nominal Defendant, and the reasonableness of their fees and expenses. Moreover, the Manual for Complex Litigation recognizes the benefits of appointing class counsel in complex, multiparty litigation:

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

- 6 -

> Complex litigation often involves numerous parties with common or similar interest but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

Manual for Complex Litigation (Fourth) § 10.22.

The criteria for appointing lead counsel in shareholder derivative actions should be similar to those utilized under Rule 23(g) in class actions. These factors are: (i) [t]he work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *Nicolow v. Hewlett Packard Co.*, Nos. 12–05980 CRB, 12–06003 CRB, 12–06074 CRB, 12–06410 CRB, 12–06199 CRB, 13–00301 CRB, 2013 WL 792642, at *9 (N.D. Cal. Mar. 4, 2013); *Bernhard v. TD Bank, N.A.*, Civ. No. 08-4392, 2009 U.S. Dist. LEXIS 92308, at *14 (D.N.J. Oct. 5, 2009) (citing Fed. R. Civ. P. 23(g)(1)(A)). The Court must decide if the proposed candidates are qualified, holding dispositive no single factor. Fed. R. Civ. P. 23(g)(2)(B).

In the proposed Consolidated Action, the appointment of Wolf and GM&E as co-lead counsel will best serve the interest of Marathon. Further, supporting the appointment of proposed Co-Lead Counsel are the criteria for selecting counsel set forth in *Newberg* on Class Actions, which state that the relevant factors "include experience and prior success, the number, the size, and extent of involvement of represented litigants, the advanced stage of proceedings in a particular suit, and the nature of the causes of action alleged." 3 Alba Conte & Herbet B. Newberg, *Newberg on Class Actions* § 9.35, at 388 (4th ed. 2002). Each of these factors supports the appointment of proposed Co-Lead in the proposed Consolidated Action.

### 1.     The Work Done by Counsel

Before filing their respective complaints, Wolf and GM&E investigated the underlying conduct and the potential legal claims. Wolf and GM&E drafted complaints and worked to develop the factual allegations and legal claims asserted in their respective complaints, and to ensure their accuracy.

///

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

Once the litigation commenced, Plaintiffs' Counsel worked together in the litigation to organize and coordinate the litigation, propose the consolidation of the actions, continue to investigate the facts, and research legal theories for an anticipated consolidated complaint. The two firms have conferred with defense counsel to attempt to organize the two actions into a consolidated action and set a schedule for the filing of a consolidated complaint. All of this work was performed for the benefit of the Nominal Defendant on a consensus basis among the two Plaintiff law firms, without duplication of effort or the need for judicial intervention.

### 2. Wolf and GM&E's Experience

The second Rule 23(g) factor also supports appointment of Wolf and GM&E as interim co-lead counsel. The two firms have extensive experience in litigating complex civil cases of all types including shareholder rights, have achieved significant relief for their clients through settlement and trial, and have served in leadership positions in multiple complex actions throughout the country.

#### a. Wolf's Experience

Wolf has been a leading national law firm with extensive experience in shareholder derivative actions for more than fifty years. Wolf has been lead or co-lead counsel in securities class and derivative actions that have recouped billions of dollars on behalf of investors, including stockholder rights class actions that have resulted in billions of dollars in increased merger consideration to shareholder classes and in derivative litigation that has recovered billions of dollars for corporations.

Wolf's pioneering efforts in difficult or unusual areas of securities or investor protection laws include: groundbreaking derivative claims under the Investment Company Act of 1940 regarding fiduciary responsibilities of investment companies and their advisors toward their shareholders; claims for breach of fiduciary duty against the directors in connection with change of control transactions; breach of fiduciary duty claims involving director self-dealing and lack of oversight. For example, in *In re Mutual Fund Investment Litigation*, MDL No. 1586 (D. Md.), the firm was lead derivative counsel in a large collection of cases against mutual fund companies accused of market timing which achieved more than $300 million in settlement. In *American*

MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT

- 8 -

1  *International Group Consolidated Derivative Litigation*, C.A. No. 769-VCS (Del. Ch.), Wolf was
2  co-lead counsel and achieved a $125 million settlement. In *In Re Bank of America Stockholder*
3  *Derivative Litigation*, C.A. No. 4307-CS (Del. Ch.), the firm was co-lead and achieved $42.5
4  million in settlement benefits.

5  Wolf has served as lead or co-lead in many other securities class actions, such as *In re*
6  *BankAmerica Corp. Securities Litigation*, MDL Docket No. 1264 (JFN) (E.D. Mo.), in which the
7  class recovered $490 million, and *In re Initial Public Offering Securities Litigation*, 21 MC 92
8  (SAS) (S.D.N.Y.), in which the class recovered $586 million.  A copy of the firm resume of the
9  Wolf firm is attached to the Declaration of Mark Rifkin as Exhibit 1.

10        **b.**      **GM&E's Experience**

11  GM&E has extensive experience in handling shareholder actions and other similar
12  complex lawsuits and has prosecuted numerous securities class action and derivative shareholder
13  cases, and therefore, possess substantial knowledge about the applicable law.  In addition, the firm
14  is well capitalized, and fully capable and prepared to staff and finance this derivative litigation.
15  *See* GM&E's Firm Résumé attached to the Declaration of Mark Rifkin at Exhibit 2.

16  GM&E made law with its successful prosecution of an appeal to the United States
17  Supreme Court wherein the Court struck down a "presumption of prudence" that lower courts had
18  been using to the protect the actions of fiduciaries of employer retirement plans who imprudently
19  invested in company stock for the retirement plan.  In the case, *Fifth Third Bancorp v,*
20  *Dudenhoeffer*, No. 12-751, 2014 WL 2864481 (Sup. Ct. June 25, 2014), GM&E argued with co-
21  counsel that the presumption was illegitimate and had no place in the ERISA statutory framework.
22  The Supreme Court agreed.

23  GM&E has also been lead counsel or co-lead counsel in numerous derivative and
24  shareholder actions and has produced substantial recoveries for shareholders.  GM&E was lead
25  counsel in *In re Schering-Plough Corp. Enhance ERISA Litig.*, Civil Action No.: 08-cv-1432
26  (D.N.J.) (recovery of $12.25 million for breach of fiduciary duty to the company's 401(k) plan); *In*
27  *re Popular Inc. ERISA Litig.*, Master File No.: 09-cv-01552-ADC (D. P.R.) (recovery of $8.2
28  million for breaches of fiduciary duty owed to the company's 401(k) plan); *Boyd, et al. v.*

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD  COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

*Coventry Health, et al.*, Civil Action No.: 09-cv-2661 (D. Md.) (breach of fiduciary duty recovery of $3.6 million for the company's 401(k) plan); *Morrison v. MoneyGram Int'l, Inc., et al.*, Civil Action No.: 08-cv-1121 (D. Minn.) (sole lead counsel producing a recovery of $4.5 million for breach of fiduciary duties owed to the company's 401(k) plan); *In re General Growth Properties, Inc. ERISA Litig.*, Master File No.: 08-cv-6680 (N.D. Ill.) (Co-Class Counsel for the Settlement Class producing a recovery of $5.75 million for the company's 401(k) plan).

### 3. The Resources Counsel Will Commit to Representing the Nominal Defendant

Plaintiffs' Counsel have the resources necessary to lead this litigation. The firms have sufficient numbers of attorneys and other professionals to staff this case, and they have successfully managed complex, resource-intensive cases in the past. The firms have invested in the technology support necessary to handle complex matters, and each has designated a primary team of attorneys who will bring their unique skills and experience to representing the nominal defendant. The firms routinely advance the costs of litigation and have demonstrated an ability and willingness to dedicate substantial resources to vigorously prosecute the derivative claims asserted in the instant action.

The two firms are prepared to commit the resources necessary to prosecute this case to a successful conclusion. The proposed leadership structure is ideally suited to the particular circumstances of this litigation, which will require a lean team of dedicated lawyers with sufficient resources to prosecute this litigation against sophisticated and well-financed defendants. The firms are well established, reputable, and have demonstrated that they are capable of handling the challenges of this litigation and committing the necessary resources to effectively represent the proposed class.

### C. Motion To Stay

The Court is vested with the inherent power and authority to manage its calendar. *See Dambach v. Tenth Judicial Dist. Ct.,* 130 Nev. Adv. Op. 33, 324 P.3d 369, 373 (2014). This includes the discretion to stay these proceedings pending resolution of the instant motion. Additionally, NRCP 16.1 reflects the Court's wide discretion in managing all aspects of cases

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

before it.  Among the Court's powers is the right to take action to discourage "wasteful pretrial activities", "to improve the quality of the trial through more thorough preparation", and to craft any procedures "appropriate in the circumstances of the case." NRCP 16.1 (a)(3) and (4); NRCP 16.1 (b)(5).

Here, Plaintiffs seek a limited, temporary stay to allow the instant motion to be decided, the two similar cases consolidated, co-lead counsel for the prosecution of the action appointed and a schedule set for the drafting and filing of the consolidated complaint.  Consolidating the actions and proceeding in an orderly fashion will save judicial resources.

**V.     CONCLUSION**

Plaintiffs respectfully request that the Court (1) consolidate the actions, (2) appoint Wolf and GM&E to serve as interim co-lead counsel in this litigation and (3) order that the pending motion to dismiss briefing in each action be temporarily stayed until after the actions are consolidated and a schedule is set for the filing of a consolidated complaint. In the alternative, if the instant motion is denied, Plaintiffs ask that any response to the pending motions to dismiss be due twenty-one (21) after an order is entered on the instant motion.

Dated: May 23, 2022

**MATTHEW L. SHARP, LTD.**

_/s/ Matthew L. Sharp_
Matthew L. Sharp
432 Ridge Street
Reno, NV 89501
Phone: (775) 324-1500
Email: matt@mattsharplaw.com

Gregory M. Egleston
*Pro-Hac Vice Application to be filed*
**GAINEY McKENNA & EGLESTON**
501 Fifth Avenue, 19th Floor
New York, New York 10017
Phone: (212) 983-1300
Fax: (212) 983-0383
Email: gegleston@gme-aw.com

***Attorneys for Plaintiff Bernard***

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD  COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

- 11 -

                 */s/ G. Mark Albright*
                 G. Mark Albright, Esq. (NV Bar # 1394)
Daniel R. Ormsby, Esq. (NV Bar # 14595)
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 S Rancho Dr., Ste D4
Las Vegas, NV 89106
Tel: (702) 384-7111

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Ave., 9th Fl
New York, NY 10016
Tel: (212) 545-4600

*Attorneys for Plaintiff Strassman*

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that I am an employee of MATTHEW L. SHARP, LTD., and that on this date, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

James J. Pisanelli, Esq.:  JJP@pisanellibice.com

Debra L. Spinelli, Esq.:  DLS@pisanelliice.com

DATED this 23rd day of May 2022.

/s/ Cristin B. Sharp
An employee of Matthew L. Sharp, Ltd.

**MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND TO (3) TEMPORARILY STAY ALL MOTION TO DISMISS BRIEFING AND MEMORANDUM IN SUPPORT**

- 13 -

14