1  G. MARK ALBRIGHT, ESQ. (NV Bar # 1394)
   DANIEL R. ORMSBY, ESQ. (NV Bar # 14595)
2  ALBRIGHT, STODDARD, WARNICK
   & ALBRIGHT
3  801 S Rancho Dr., Ste D4
   Las Vegas, NV 89106
4  (702) 384-7111

5  *[Proposed] Liaison Counsel for Plaintiffs*

6  *ADDITIONAL COUNSEL ON SIGNATURE PAGE*

7                    **UNITED STATES DISTRICT COURT**

8                        **DISTRICT OF NEVADA**

9
   KIMBERLY BERNARD, Derivatively on Behalf of
10 MARATHON DIGITAL HOLDINGS, INC. (f/k/a        Case No.:        2:22-cv-00305-RFB-NJK
   MARATHON PATENT GROUP, INC.),
11                                Plaintiff,

12 v.                                            **MEMORANDUM OF LAW IN REPLY**
                                                 **TO DEFENDANT'S RESPONSE TO**
   FRED THEIL, GEORGES ANTOUN, KEVIN            **MOTION (ECF NOS. 34, 35, AND 36)**
13 DENUCCIO, SARITA JAMES, JAY LEUPP,           **TO CONSOLIDATE, APPOINT LEAD**
   SAID OUISSAL, MERRICK D. OKAMOTO, and        **COUNSEL, AND INDEFINITELY**
14 SIMEON SALZMAN,                              **STAY MAY 31, 2022 DEADLINE TO**
   -and-                                        **RESPOND TO MOTIONS TO**
15                                               **DISMISS.**

16 MARATHON DIGITAL HOLDING, INC. (f/k/a
   MARATHON PATENT GROUP, INC.),
17
                                  Defendants
18

19
   ────────────────────────────────────────
20 *Additional caption on next Page*

21

22

23

24

25

26

27

28

|  | |
|---|---|
| ROY STRASSMAN, Derivatively on Behalf of MARATHON DIGITAL HOLDINGS, INC. (f/k/a MARATHON PATENT GROUP, INC.),<br><br>                            Plaintiff,<br><br>            v.<br><br>FRED THEIL, GEORGES ANTOUN, KEVIN DENUCCIO, SARITA JAMES, JAY LEUPP, SAID OUISSAL, MERRICK D. OKAMOTO, AND SIMEON SALZMAN,<br><br>                            Defendants,<br><br>-and-<br><br>MARATHON DIGITAL HOLDINGS, INC. (f/k/a MARATHON PATENT GROUP, INC.),<br><br>                            Nominal Defendant | Case No.:        2:22-cv-00724-ART-EJY |

Plaintiffs Kimberly Bernard and Roy Strassman (collectively, the "Consolidated Plaintiffs") respectfully submit this Memorandum of Law in Reply to Defendant's Response To Motion (ECF Nos. 34, 35, and 36) To Consolidate, Appoint Lead Counsel, And Indefinitely Stay May 31, 2022 Deadline To Respond To Motions To Dismiss ("Opp.).

## I.    INTRODUCTION

This Court has now consolidated the two actions, *see* ECF 41 in *Bernard* and ECF 29 in *Strassman*.  Thus, this branch of the instant motion has been resolved.

As to the second branch of the motion for appointment of interim co-lead counsel, Defendants have no objection to said relief.  *See* Opp, p. 5 at ECF 37.  The third branch of the instant motion still needs to be resolved.  The interim stay requested by Plaintiff, the third branch of the motion, should be granted for the reasons set forth in the opening papers and below.

## II.    ARGUMENT

This consolidated derivative action is based on a similar set of facts as the related securities class action pending before this Court, captioned *Tad Schlatre v. Marathon Digital Holdings, Inc. f/k/a Marathon Patent Group, Inc., Merrick D. Okamoto, Frederick G. Thiel, and Simeon Salzma*n, Case No. 2:21-cv-2209-RFB-NJK ("Securities Class Action").  Motions for appointment of lead ///

1    counsel are fully briefed and pending before this Court.  Once a lead plaintiff is appointed, that lead

2    plaintiff will file an amended complaint and the defendants will likely move to dismiss.

3        Though this consolidated Derivative Action and the Securities Class Action both concern

4    related parties and misconduct, the interests of the plaintiffs in the Derivative Action and Securities

5    Class Action are very different, and the actions involve distinct legal claims.  Therefore, Plaintiffs

6    believe coordination of both actions is warranted and in the interest of judicial economy.

7        The Securities Class Action alleges violations of the federal securities laws ***against***, among

8    others, Marathon, whereas the Derivative Action asserts claims derivatively ***on behalf of Marathon***.

9    The Securities Class Action involves direct claims against the Company for damaging shareholders

10   because of allegedly false and misleading statements about Marathon's business operations and

11   prospects made in investor presentations, filings with the Securities and Exchange Commission

12   ("SEC"), and in press releases. The Derivative Action alleges that certain Company directors and

13   officers, most of whom are not named in the Securities Class Action, breached their fiduciary duties

14   to the Company by, *inter alia,* making and/or allowing the Company to make substantially similar

15   statements to investors as those alleged in the Securities Class Action, and engaged in other

16   misconduct in connection with the above and the Company's conduct of its business.  Because of

17   the distinct nature of the claims asserted in derivative and securities actions, the different individual

18   defendants named in the actions, and the potential conflicts between the securities and derivative

19   claims, courts often take the more common approach of allowing related securities and derivative

20   actions to proceed sequentially. *See In re Bear Systems Cos. Sec., Derivative & ERISA Litig.,* No.

21   08 M.D.L. 1963 (RWS), 2009 WL 50132, at *5 (S.D.N.Y. Jan. 5, 2009). Moreover, any recovery

22   that may be awarded in a derivative action is for the company on whose behalf the action is brought

23   as opposed to the shareholders of that company.

24       However, courts often coordinate the proceedings in a derivative action with a related

25   securities class action. Generally, a securities class action proceeds ahead of a related derivative

26   action because significant claims related to liability and damages alleged in the derivative action(s)

27   depend upon the proceedings and allegations in the securities class action. In these circumstances,

28   "the sensible ordering of events is for the … [securities class] [a]ction to proceed first." *In re*

1    *Groupon Derivative Litig.,* 882 F. Supp. 2d 1043, 1049 (N.D. Ill. 2012). Accordingly, Plaintiff seeks

2    to file an amended complaint after an amended complaint is filed in the Securities Class Action.

3         For these reasons, Plaintiff respectfully requests that the Court: (i) vacate the current

4    deadlines for Plaintiffs to respond to the pending motions to dismiss in each action; (ii) temporarily

5    stay this consolidated action to allow Plaintiff to leave to file a consolidated complaint within thirty

6    (30) days after the amended complaint is filed in the Securities Class Action and/or temporarily stay

7    this action until the motion to dismiss is decided in the Securities Class Action; and (iii) in order to

8    conserve resources of the Court and the parties, issue an order setting a new deadline for Defendants

9    to respond only to the amended complaint Plaintiff intends to file in the Derivative Action.

10        **A.   *This Action Should Be Temporarily Stayed***

11        This court has complete discretion to grant a motion to stay an action within its jurisdiction.

12   *Mediterranean Enters., Inc. v. Ssangyong*, 708 F.2d 1458, 1465 (9th Cir. 1983) (stating "[t]he trial

13   court possesses the inherent power to control its own docket and calendar"); *In re MGM Mirage,*

14   *Deriv. Litig.*, 2014 WL 1347840, at *1 (D. Nev. Apr. 4, 2014) (the trial court has discretion

15   to stay proceedings "'incidental to the power inherent in every court to control the disposition

16   of the causes on its docket with economy of time and effort for itself, for counsel, and for

17   litigants.'") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *Stern v. United States*,

18   563 F. Supp. 484, 489 (D. Nev. 1983) (stating "[e]very court has the inherent power to stay causes

19   on its docket with a view to avoiding duplicative litigation, inconsistent results, and waste of time

20   and effort by itself, the litigants and counsel."); *see also **Nevada Civil Practice Manual** § 3.07 (5th

21   ed. 2006) (stating "a frequently exercised ground [for granting a stay] is the pendency of a related

22   action").

23        In determining whether or not to grant a temporary stay, courts should consider "'the possible

24   damage which may result from the granting of a stay, the hardship or inequity which a party may

25   suffer in being required to go forward, and the orderly course of justice measured in terms of the

26   simplifying or complicating of issues, proof, and questions of law which could be expected to

27   result from a stay.'" *In re MGM Mirage, Deriv. Litig.*, 2014 WL 1347840 at *1 (citing *Lockyer v.*

28   *Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).   Courts thus look to "practical

considerations" such as potential prejudice to the parties, simplification of issues, and judicial efficiency.

As relevant here, courts regularly temporarily stay shareholder derivative actions to allow a related securities class actions that raises the same or similar allegations against a corporation to move forward initially with its amended complaint given (i) prejudice to the corporation (and other overlapping defendants) in having to litigate two actions raising the same issues at the same time; (ii) the simplification of issues in the derivative action that would result if the securities action were allowed to proceed first; (iii) the risk of inconsistent judgments and increased costs and inefficiencies if both actions were allowed to proceed simultaneously. *See, e.g.*, *Rosenblum v. Sharer*, 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008) (identifying same factors) (citing *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)).

### B.   *A Stay Will Also Assist In Avoiding Prejudice To Marathon And Defendants*

Courts also often stay related derivative actions until after a decision on the motion to dismiss the related securities class action and/or until the conclusion of the related securities class action. Here, a stay may be warranted to avoid significant prejudice to Marathon and Defendants if Plaintiffs in this Action were allowed to prosecute their claims in Marathon's name while Marathon and certain Defendants are also defending substantially the same allegations in the Securities Action. Courts have recognized that litigating a shareholder derivative action and related securities action concurrently "could undermine [the company's] defense of the securities class action" because it "would require Plaintiffs [in the derivative action] to prove the very same alleged misconduct that is the basis of the securities class action, and to attack the credibility of witnesses also named as defendants in that action". *In re Wynn Resorts, Ltd. Deriv. Litig.*, 2019 WL 1429526, at *2 (D. Nev. Mar. 29, 2019); *In re Rh S'holder Deriv. Litig.*, 2019 WL 580668, at *4 (N.D. Cal. Jan. 23, 2019) (agreeing with defendants "that proceeding with the Derivative Action risks prejudicing [the company's] defense in the Securities Class Action" and that "[m]yriad courts have found this argument sufficient reason to support a stay in a derivative action.").

Courts have stayed derivative actions because of the inherent "tension" and prejudice to a company in compelling it to both prosecute *and* defend against substantially similar

allegations in favor of a related and pending securities class action. *See, e.g.*, *In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at \*4 ("Courts generally stay a shareholder derivative suit until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter."); *In re DaVita Inc. S'holder Deriv. Litig.*, 2018 WL3105061, at \*3 (D. Del. June 25, 2018) (granting stay and agreeing with the argument that proceeding with the derivative action would be "antithetical" to defendants' defensive position in the securities action since it would force the company to "accuse its directors of violations of federal securities laws, while, at the same time, defending itself against the same allegations" in the derivative action).

Courts have also found that the tension and prejudice is not limited to just the company but extends also to the officers and directors defendants "in the derivative action [who] would be important witnesses for [the company] in the securities class action," and who would be placed the difficult position of potentially being adverse to their company in the derivative litigation with respect to the same allegations on which they are aligned with the company in the securities litigation. *Rosenblum*, 2008 WL 9396534, at \*8 (identifying this tension in granting stay).

Here, the risk of prejudice seems apparent. It will be the rare securities class action where defendants do not make a motion to dismiss denying that that they made any false and misleading statements or violated the securities laws. That motion to dismiss is coming once lead plaintiff is appointed in the Securities Class Action. There is a significant risk that if Plaintiffs here were allowed to pursue those same allegations in Marathon's name, Marathon would be forced to take inconsistent positions on a number of issues critical to both that action and this one, such as whether the challenged statements were false or misleading and whether the makers of those statements intended to mislead the public. Further, if both actions were to proceed concurrently as opposed to in a staggered fashion, Marathon would likely have to undertake discovery with different goals in mind, putting it in the difficult, and highly prejudicial position of both trying to adduce evidence for and against the same allegations. And it would put the director and officer Defendants here in the similarly difficult and prejudicial position of having to take an adversarial posture with the Company with respect to similar allegations in the Securities Class Action where Defendants and Marathon are aligned. As other

courts held, director - defendants like those here "are likely witnesses in both cases, but [plaintiff] must attempt to undermine their credibility while the Company presumably will attempt to rely on their veracity. The potential for such conflicts . . . creates a significant risk that prosecution of [plaintiff's] case will prejudice [the Company]." *Brenner v. Albrecht*, 2012 WL 252286, at *6 (Del. Ch. Jan. 27, 2012); *Breault v. Folino*, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (identifying same issue); *In re Wynn*, 2019 WL 1429526, at *2 (litigating both derivative and securities actions simultaneously "would require Plaintiffs [in the derivative action] … to attack the credibility of witnesses also named as defendants in that action [which] could undermine [the company's] defense of the securities class action").

Also, allowing both actions to proceed simultaneously could contravene the purpose of a shareholder derivative action, which is to promote the company's best interests. *See In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *4 ("[B]y virtue of bringing this derivative action, [p]laintiff is STEC's fiduciary and has a duty to act in the company's best interest. It follows that Plaintiff may proceed with this action only if and when it is in STEC's best interest."). Marathon's best interests would not be served if it were forced to take opposite litigation positions on the same allegations.

### C.   *A Temporary Stay May Help Simplify And Resolve Key Issues In This Action*

A temporary stay until the motion to dismiss the Securities Class action amended complaint would also be warranted because the issues presented here will potentially be simplified— or even rendered moot—by the resolution of the motion to dismiss in the Securities Action given the substantial overlap in allegations between actions. *See In re Wynn*, 2019 WL 1429526, at *3 (stay granted because if the shareholder's securities claims were dismissed, there would be an "increase in the orderly course of justice that will come from the increased judicial economy and the crystallization of the factual issues") (citation omitted); *In re Rh S'holder Derivative Litig.*, 2019 WL 580668, at *4 (stay warranted where resolution of claims in a parallel securities action "will simplify issues, proof, and questions of law in the Derivative Action and will therefore help preserve judicial resources and promote the orderly course of justice") (internal citation omitted). For example, if this Court determines in the Securities Action that no challenged statement in that

1   amended complaint was false, misleading, or material, such a finding would affect Plaintiffs'

2   claims here given the overlapping challenged statements.  *Rosenblum*, 2008 WL 9396534, at *8

3   (staying derivative case where shareholders' claims "necessarily depend on the outcome of the

4   securities class action, and noting that if the company were "exonerated in the securities class action,

5   then it is unclear what, if anything, would be left of the derivative action.").

6          Moreover, staying this Action now will help clarify—or even eliminate—damages in this

7   Action.  As noted *supra*, Plaintiffs here allege that Defendants' purported conducted has harmed

8   Marathon insofar as it has resulted in the company being sued in the Securities Action and,

9   resultantly, has caused it to experience a loss of reputation and good will and suffer a so- called

10  "liar's discount."  And Plaintiffs seek as damages any amounts Marathon has and will expend in

11  the Securities Action as well as indemnification from the Individual Defendants Okamoto, Theil and

12  Salzman. If, however, Marathon and defendants in the Securities Action were to defeat that action

13  on the merits, Plaintiffs' claimed damages and harm to the Company here would likely be impacted.

14  *See, e.g.*, *In re Wynn*, 2019 WL 1429526, at *3 (granting a stay because resolution of securities action

15  favorable to company would spare it "the expense of pursuing doomed claims" in the derivative

16  action); *accord In re Bofl Holding, Inc. S'holder Litig.*, 848 Fed. App'x 234 (9th Cir.  Feb.  25,

17  2021) (stay appropriate where relief in derivative action, including legal fees defending other

18  securities and derivative actions raising same allegations, depends on "the outcome of the [ ]

19  other ongoing lawsuits").

20         In addition, the fact that this Action asserts breach of fiduciary duty claims not pled in

21  the Securities Action against additional directors not named in that action is not dispositive.  Courts

22  have held, "identical claims are not a prerequisite for granting a stay of a derivative

23  shareholder action pending resolution of a related shareholder class action."  *Aspex Eyewear, Inc.v.*

24  *Revolution Eyewear, Inc.*, 2008 WL 11409571, at *5 (C.D. Cal. Mar. 7, 2008).  Nor is there any

25  prerequisite that defendants must perfectly overlap.  *See, e.g., In re Ormat Techs., Inc.*, 2011 WL

26  3841089, at *5 (D. Nev. Aug. 29, 2011) ("The fact that Plaintiffs in this case are not lead plaintiffs in

27  the Securities Class Action, and that there are additional defendants in this case, do not require a

28  finding that a stay is not warranted.  We do not believe that the two actions must involve exactly the

1  same parties and that Plaintiffs of a shareholder derivative suit must be the lead plaintiffs in the

2  class action suit in order for a stay.").

3          The issue that courts have focused on is whether the core allegations between the two actions

4  are similar such that temporarily staying the derivative action in favor of the securities action will

5  simplify the issues in the derivative action, and otherwise preserve this Court's and the

6  company's resources and promote efficiencies. *In re Rh S'holder Deriv. Litig.*, 2019 WL 580668,

7  at \*4 (stay warranted even though derivative action raised insider trading and Section 14(a) claims

8  not raised in securities action where core facts overlapped such that adjudicating securities action

9  first would simplify issues in derivative action); *In re Wynn*, 2019 WL 1429526, at \*3 (granting stay

10  of derivative case while securities action was pending notwithstanding different claims where

11  "factual allegations" underlying both claims were similar).

12          **D.    _A Temporary Stay Will Likely Preserve Resources And Promote Efficiency_**

13          Staying this Action now temporarily will also likely promote efficiency and preserve

14  Marathon's—and this Court's—limited time and resources. *See In re STEC, Inc. Derivative Litig.*,

15  2012 WL 8978155, at \*4 (staying derivative action in favor of securities action in part to preserve

16  the Company's financial and management resources that would be unnecessarily expended if both

17  actions proceed simultaneously).  This Action is currently in its early stages—Defendants have yet

18  to answer the Complaint, discovery has not begun, and only limited resources have been expended

19  thus far.  Granting a temporary stay now would prevent Marathon and overlapping defendants from

20  having to expend a significant amount of resources to carry out what are likely to be duplicative

21  and inefficient proceedings. *See In re Ormat Techs., Inc.*, 2011 WL 3841089, at \*4 (D. Nev. Aug.

22  29, 2011) (finding that staying derivative case would preserve judicial resources because it would

23  divert financial and management resources away from the underlying securities action); *In re Rh*

24  *S'holder Deriv. Litig.*, 2019 WL 580668, at \*4 (staying derivative case early in litigation in favor

25  of securities class action in part where doing so would preserve judicial resources "and promote

26  the orderly course of justice."); *Aspex*, 2008 WL 11409571, at \*5 (granting a motion to stay

27  where the issue of liability would be determined by the earlier-filed action and it would "make[]

28  no sense to expend time or resources litigating those matters pending receipt of the Federal

Albright Stoddard
Warnick & Albright

Circuit's decision"); *Rosenblum*, 2008 WL 9396534, at *8 (stay warranted because it "would preserve judicial resources, since the allegations, issues and parties in the two lawsuits substantially overlap.").

    **E.**      *__A Temporary Stay Reduces The Risk Of Inconsistent Rulings And Judgments__*

A temporary stay will also likely avoid the chance that Marathon or Defendants here are subject to inconsistent obligations, rulings, or judgments. *See Branch Banking & Tr. Co. v. 27TH & S. Holding, LLC*, 2012 WL 6562027, at *1 (D. Nev. Dec. 13, 2012) (granting stay to avoid the possibility of piecemeal litigation and inconsistent outcomes due to the similar legal issues in the state appeals and present case); *In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *6 (granting stay of derivative action pending securities action in part because "the stay will obviate the threat of conflicting outcomes in the cases."). Marathon is likely to be on opposite sides of the same or similar issues if both actions were to proceed simultaneously. This raises the possibility that Marathon will be subject to competing and/or conflicting obligations or rulings. *See also In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *8 ("Two juries, considering the same evidence and hearing testimony could reach opposite or conflicting results. Accordingly, a stay would help reduce the likelihood of conflicting outcomes.").

///
///
///
///
///
///
///
///
///
///
///
///

III.     CONCLUSION

Plaintiff respectfully requests that the Court: (i) vacate the current deadlines for Plaintiffs to respond to the pending motions to dismiss in each action; (ii) temporarily stay this consolidated action to allow Plaintiff to leave to file a consolidated complaint within thirty (30) days after the amended complaint is filed in the Securities Class Action and/or temporarily stay this action until the motion to dismiss is decided in the Securities Class Action; and (iii) in order to conserve resources of the Court and the parties, issue an order setting a new deadline for Defendants to respond only to the amended complaint Plaintiff intends to file in the Derivative Action.

Dated: June 3, 2022

 */s/ G. Mark Albright, Esq.*
G. Mark Albright, Esq. (NV Bar # 1394)
Daniel R. Ormsby, Esq. (NV Bar # 14595)
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 S Rancho Dr., Ste D4
Las Vegas, NV 89106
Tel: (702) 384-7111

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Ave., 9th Fl
New York, NY 10016
Tel: (212) 545-4600

***Attorneys for Plaintiff Strassman***

**MATTHEW L. SHARP, LTD.**

By: */s/ Matthew L. Sharp*
Matthew L. Sharp
432 Ridge Street
Reno, NV 89501
Phone: (775) 324-1500
Email: matt@mattsharplaw.com

Thomas J. McKenna
Gregory M. Egleston
**GAINEY McKENNA & EGLESTON**
501 Fifth Avenue, 19th Floor
New York, New York 10017
Phone: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-aw.com

***Attorneys for Plaintiff Bernard***